UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BRETT P. RYAN,

               Plaintiff,

    v.

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

              Defendant.

CASE NO. 14-cv-05300 JRC

ORDER ON PLAINTIFF'S
COMPLAINT

      This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and

Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S.

Magistrate Judge and Consent Form, ECF No. 5; Consent to Proceed Before a United

States Magistrate Judge, ECF No. 6). This matter has been fully briefed (*see* ECF Nos.

13, 16, 17).

      After considering and reviewing the record, the Court concludes that the ALJ

failed to discuss various significant and probative aspects of the record in this case,

including two opinions from examining doctors, as well as objective testing and a diagnosis regarding plaintiff's sleep apnea. The sleep study performed to evaluate plaintiff's sleep issues clearly is significant probative evidence that the ALJ erred by failing to discuss.

Therefore, this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further proceedings.

BACKGROUND

Plaintiff, BRETT P. RYAN, was born in 1989, and the alleged date of disability onset is August 7, 1989 (*see* Tr. 258-59, 260-66). Plaintiff dropped out of school in the 10th grade and tried to get his GED through a vocational college but failed (Tr. 51-52). He worked briefly through the Division of Vocational Rehabilitation de-burring metal, but was fired, allegedly because he was obese, could not work in the environment and needed to get his GED (Tr. 55-56).

According to the ALJ, "since August 6, 2007, the claimant has the following severe impairments: dysthymic disorder; attention deficit hyperactivity disorder (ADHD); personality disorder; borderline intellectual functioning; asthma; hypertensive vascular disease; [and] obesity (20 CFR 404.1520(c) and 416.920(c))" (Tr. 24).

At the time of the hearing, plaintiff was living with his mother (Tr. 59).

PROCEDURAL HISTORY

Plaintiff's applications for child insurance benefits based on disability pursuant to 42 U.S.C. §§ 402(d)(1), 423 (Title II) and Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act were

denied initially and following reconsideration (*see* Tr. 80-90, 91-101, 104-118, 119-133). Plaintiff's requested hearing was held before Administrative Law Judge Gary Elliott ("the ALJ") on November 28, 2012 (*see* Tr. 42-74). On December 5, 2012, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* Tr.18-41).

In plaintiff's Opening Brief, plaintiff raises the following issues: (1) Did the ALJ fail to consider physical and mental evidence at step two and in fashioning the RFC; (2) Did the ALJ selectively chose which mental assessments to give weight to and which to reject using inconsistent criteria in order to support his ultimate conclusion to deny the claim; (3) Is the credibility assessment by the ALJ based on an improper analysis; (4) Is the rejection of the lay witness evidence based on an improper legal analysis and unsupported evidentiary reasons; (5) Did the ALJ err by ignoring GAF scores from various examining or treating mental experts that fell within a narrow range; (6) Did the ALJ err by finding plaintiff capable of working at a job that is inconsistent with a limitation to simple routine tasks; and (7) Did the ALJ err by failing to respond to a request for a subpoena duces tecum for the VE resulting in VE testimony about job numbers that the VE was unable to substantiate (*see* ECF No. 13, pp. 1-2). Because the Court concludes that arguments one and two are dispositive in this case, and that this matter must be reversed and remanded for further proceedings, the remaining arguments either will not be discussed herein, or will be discussed only briefly.

//

//

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

## DISCUSSION

**(1) Did the ALJ fail to consider physical and mental evidence at step 2 and in fashioning the RFC?**

a.   Plaintiff's sleep apnea

The ALJ erred by failing to discuss explicitly plaintiff's sleep apnea and his sleep study performed on May 6, 2012 (*see* ECF No. 13, pp. 18-19; Tr. 716-19). The ALJ's decision includes no discussion of plaintiff's sleep apnea. Defendant contends that this error was harmless because a "mere diagnosis says nothing about the severity of a condition" (*see* ECF No. 16, p. 14 (*citing Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988))). However, the record contains more than a "mere diagnosis" regarding this condition.

Plaintiff was referred by Dr. Surinder Singh, M.D. to Dr. Gita G. Patel, D.O., for an overnight polysomnography in order to evaluate plaintiff's sleep complaints, said study being conducted on May 6, 2012 (*see* Tr. 717-18). Dr. Patel conducted a history of plaintiff's present illness, including the notation that plaintiff "does snort;" that he "tosses

1 and turns in bed;" that he has moderate snoring; and, that he feels fatigued in the morning

2 (*see* Tr. 717).

3      Objective evidence from this report includes the following:

4
5      Diagnostic overnight polysomnography is performed using criteria
       outlined by American Academy of Sleep Medicine alternate scoring
6      criteria. The patient coughed on and off during the study, which
       significantly reduced his sleep time, and he felt he slept worse than
7      usual. Lights out at 10:50 p.m., lights on at 5:20 a.m. The patient slept
       89.5 minutes out of a recording time of 398.4 minutes, sleep efficiency
8      22%. It took him 102.5 minutes to fall asleep. He slept entirely in non-
       supine position. He had 6% stage 1 sleep, 58% stage 2 sleep, 36% slow
9      wave sleep, and no REM sleep. Sleep was disrupted due to coughing,
       respiratory arousals, spontaneous arousals with arousal index of 23 per
10     hour. He had 3 obstructive apneas, 30 obstructive hypopneas as for a
       total of 33 respiratory events, AHI 22 per hour.

11 (Tr. 717).

12     Dr. Patel provided her interpretation of this objective evidence as follows:

13
14     INTERPRETATION: this overnight polysomnography (CPT code 95810)
       demonstrates the following:
15  1. moderate obstructive sleep apnea with an apnea-hypopnea index (AHI) of
       22 per hour, likely an underestimation secondary to non-supine sleep.
16  2. Mild obstructive sleep apnea with oxygen desaturation low of 81% in
       non-rapid eye movement (REM) sleep.
17  3. Reduced sleep efficiency.

18     CLINICAL CORRELATION: this patient has evidence of moderate
       obstructive sleep apnea, likely an underestimation secondary to non-
19     supine sleep. This primarily results in daytime sleepiness.  . . . .

20 (Tr. 717-18).

21     Based on the record as a whole, the Court concludes that the ALJ's failure to

22 discuss this objective evidence and his failure to discuss the opinion evidence from the

23 conducting doctor are harmful legal errors. Clearly, the objective evidence demonstrated

24

sleep issues, and the doctor opined that that the evidence "primarily results in daytime

sleepiness" (*see* Tr. 718). Dr. Patel also indicated that the evidence of moderate sleep

apnea was "likely an underestimation secondary to non-supine sleep" (*id.*). All of this

evidence needs to be discussed and evaluated thoroughly by the ALJ following remand of

this matter.

       Defendant's argument that plaintiff did not testify regarding this condition during

the hearing does not relieve the ALJ of his duty to discuss all significant, probative

evidence and does not explain the failure to discuss the objective medical evidence in

support of this condition, nor the failure to discuss the opinion evidence contained in this

record. *See Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (the ALJ "may not

reject 'significant probative evidence' without explanation") (*quoting Vincent v. Heckler*,

739 F.2d 1393, 1395 (9th Cir. 1984) (*quoting Cotter v. Harris*, 642 F.2d 700, 706-07 (3d

Cir. 1981))).

       Similarly, although defendant provides an analysis regarding this condition and

other evidence in the record regarding plaintiff's sleep difficulties, it is for the ALJ to

provide this analysis in the first instance. According to the Ninth Circuit, "[l]ong-standing

principles of administrative law require us to review the ALJ's decision based on the

reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that

attempt to intuit what the adjudicator may have been thinking" *Bray v. Comm'r of SSA*,

554 F.3d 1219, 1225-26 (9th Cir. 2009) (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196

(1947) (other citation omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir.

2012) ("we may not uphold an agency's decision on a ground not actually relied on by

the agency") (*citing Chenery Corp, supra*, 332 U.S. at 196).

Based on the reasons stated above, the Court concludes that the ALJ committed

harmful legal error by failing to discuss plaintiff's sleep apnea.

  b. Report from Dr. Melvin D. Shelton, M.D., examining doctor

Plaintiff contends that the ALJ failed to consider evidence from examining

psychiatrist, Dr. Melvin D. Shelton, M.D., who examined plaintiff on two occasions (*see*

ECF No. 13, pp. 17-18 (*citing* Tr. 597-600)). Because the ALJ is required to evaluate

every medical opinion, the ALJ erred by not discussing this opinion. *See Lester v. Chater*,

81 F.3d 821, 830-31 (9th Cir. 1996) (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th

Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). This error, too, should

be corrected following remand of this matter.

  (2) **Did the ALJ selectively chose which mental assessments to give weight to
and which to reject using inconsistent criteria in order to support his
ultimate conclusion to deny the claim**?

Plaintiff contends that the ALJ erred when evaluating the medical evidence and

used inconsistent criteria in order to support his ultimate conclusion to deny plaintiff's

claim. A review of the record supports plaintiff's argument. As noted by plaintiff, the

ALJ rejected some of the doctors' opinions with a finding that they relied on plaintiff's

self report when conducting their mental status examinations, but relied on the opinion

from another doctor who appeared to rely on plaintiff's self report to the same degree

when conducting his mental status examinations (*see* Tr. 27-31).

The Court notes that "experienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation. The Mental Status Examination allows the organization, completion and communication of these observations." Paula T. Trzepacz and Robert W. Baker, The Psychiatric Mental Status Examination 3 (Oxford University Press 1993). "Like the physical examination, the Mental Status Examination is termed the *objective* portion of the patient evaluation." *Id.* at 4 (emphasis in original).

Furthermore, although the ALJ discussed many of the medical opinions in the record, the ALJ failed to discuss opinions from two examining doctors, including the opinions of Dr. Katrina L. Higgins, Psy.D., as well as those of Dr. Melvin D. Shelton, M.D., *see supra*, section 1.b (*see* Tr. 26-32). In addition, the ALJ failed to provide a detailed and thorough summary of the facts and conflicting evidence.

According to the Ninth Circuit, when a treating or examining physician's opinion is contradicted, that opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

Regarding the examination of plaintiff by Dr. Higgins, the Court notes that although plaintiff did not include a discussion of this specific evaluation in his opening

brief, plaintiff did raise in his opening brief the issue of the ALJ's failure to evaluate the medical evidence properly, as well as raising the issue of the ALJ's failure to discuss all of the medical evidence of record (*see* ECF No. 13, pp. 1, 8-16, 17-19). Perhaps more importantly, the Court must independently determine whether or not "'the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing Moore v. Comm'r of the Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002) (collecting cases)); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996) (*citing Stone v. Heckler*, 761 F.2d 530, 532 (9th Cir. 1985)). Here, the Court concludes that the ALJ's decision is not free from harmful legal error.

Dr. Higgins examined plaintiff on September 8, 2011 (*see* Tr. 630-34). She reviewed numerous medical records, including psychological evaluation reports of plaintiff dated September 27, 2007 and November 3, 2008 (*see* Tr. 630). She conducted a detailed history (*see* Tr. 630-32). Dr. Higgins also conducted her own mental status examination (*see* Tr. 632). She noted, among other things, that plaintiff arrived late for the appointment, and called from the parking lot indicating that he could not find the office; that his hair appeared unkempt and he was slightly malodorous; that he seemed slightly guarded; and, "presented in a dysthymic mood with blunted affect" (*see id.*). Regarding intellectual functioning, Dr. Higgins opined that plaintiff's "intellectual functioning is estimated to be below average based on previous evaluations" (*see* Tr. 633).

1    Regarding her own observations, Dr. Higgins opined that plaintiff "displayed mild

2    difficulty with recent memory;" and was able to recall two out of three items after five

3    minutes (*see id.*). She also observed that plaintiff answered "only five of nine math

4    questions correctly," however she also noted that he made no errors on serial 7s (*see id.*).

5    Dr. Higgins observed that plaintiff "was able to spell WORLD forward but not

6    backward;" and that he struggled to recite the months of the year backward (*see id.*). She

7    indicated that he "demonstrated mild concentration deficits on digit span," and while

8    performing serial 7s (*see id.*).  Dr. Higgins opined that plaintiff interpreted proverbs in a

9    vague manner during her evaluation, but she noted that he was able to provide abstract

10   interpretations during an evaluation four years prior (*see id.*). Dr. Higgins observed that

11   plaintiff "could identify no similarities between a poem and a statue or between the fly

12   and a tree;" however, she opined that his abstracting ability was adequate (*see id.*). She

13   opined that he demonstrated little insight into his mental health conditions, but provided

14   appropriate solutions to problem-solving questions (*see id.*).

15

16   In her discussion, Dr. Higgins opined that plaintiff "does meet criteria for ADHD

17   and seems to primarily have difficulty with inattention, rather than hyperactivity" (*see

18   id.*). She specified some opinions that were based on his description, noting that plaintiff

19   describes "chronic mild symptoms of depression," as well as "symptoms of anxiety,

20   primarily around what others think of him" (*see* Tr. 633-34).

21

22   Dr. Higgins indicated her agreement with previous opinions regarding that

23   plaintiff "did not seem to be putting forth much effort" (*see* Tr. 634). She indicated that

24   regarding his cognitive functioning, it "may be a good idea for him to be reevaluated  . .

ORDER ON PLAINTIFF'S COMPLAINT - 10

1  . . to clarify his actual intellectual ability" (*see id.*). However, regarding his

2  psychological condition, Dr. Higgins opined that plaintiff's "prognosis is fair to good"

3  (*see id.*).

4          Regarding her specific functional assessment, Dr. Higgins opined that plaintiff's

5  "mental ability to withstand the stress and pressures associated with day-to-day work

6  activities is moderately impaired" (*see id.*). She opined that plaintiff "will likely struggle

7  with more complex tasks due to low motivation and poor concentration" (*see id.*). Dr.

8  Higgins also opined that plaintiff "may not complete work tasks on a consistent basis

9  without extra supervision" (*see id.*). However, she also opined that plaintiff "does have

10  the ability to accept instructions and interact appropriately with coworkers and the

11  public," as well as being "able to make simple work-related decisions without special

12  supervision" (*see id.*). Dr. Higgins opined that plaintiff "could be expected to complete a

13  normal workday without interruptions from psychological symptoms" (*see id.*).

14          Based on a review of the record as a whole, the Court concludes that the ALJ's

15  error in his failure to discuss this opinion from Dr. Higgins is not harmless error.

16  Although Dr. Higgins opined that plaintiff demonstrated sufficient functioning in some

17  areas, she also opined that plaintiff suffered from moderate limitations regarding his

18  ability to withstand the stress and pressures associated with day-to-day work activity, and

19  that he was limited with respect to his ability to "complete work tasks on a consistent

20  basis without extra supervision" (*see id.*). These opinions need to be evaluated in the first

21  instance by the ALJ.

22

23

24

Furthermore, the Court notes that when evaluating the medical evidence, the ALJ cited one comment on plaintiff's hunting at one point in time to discredit nearly all of the opinions from plaintiff's doctors, as well as using a comment from a doctor about "improvement" without any discussion of to what extent plaintiff's condition improved, and without any discussion of whether or not plaintiff's condition improved to the extent that he became capable of consistent, full-time work activity. Similarly, there was no discussion of from what limitations plaintiff's condition improved. Such is not a "detailed and thorough summary of the facts and conflicting clinical evidence." *See Reddick*, *supra*, 157 F.3d at 725 (*citing Magallanes*, *supra,* 881 F.2d at 751). The record suggests that plaintiff's ability to function in a work environment may have varied over time, demonstrated by Dr. Higgins opinion, as well as being demonstrated by the ALJ's own finding of improvement in the record and the ALJ's reliance on this finding of improvement to discredit nearly all of the opinions from examining doctors (*see* Tr. 24, 29-31, 633). The existence of this finding of improvement suggests that there may be a limited period of time during the alleged period of disability within which plaintiff may have suffered from further limitations than found by the ALJ in his RFC (*see* Tr. 25-26).

For the reasons stated and based on the relevant record as a whole, the Court concludes that the ALJ erred during his evaluation of the medical evidence.

(3) **Is the credibility assessment by the ALJ based on an improper analysis**?

The Court already has concluded that the ALJ erred in reviewing the medical evidence and that this matter should be reversed and remanded for further consideration,

*see supra*, sections 1 and 2. In addition, a determination of a claimant's credibility relies

in part on the assessment of the medical evidence. *See* 20 C.F.R. § 404.1529(c).

Therefore, plaintiff's credibility should be assessed anew following remand of this

matter.

     (4) **Is the rejection of the lay witness evidence based on an improper legal analysis and unsupported evidentiary reasons**?

     The Court already has concluded that the ALJ erred in reviewing the medical

evidence and that this matter should be reversed and remanded for further consideration,

*see supra*, sections 1 and 2. In addition, plaintiff's credibility shall be assessed anew

following remand of this matter, *see supra*, section 3. Because the ALJ failed to credit

fully the lay evidence based, in part, on a finding that "the claimant's mother based her

statements in large part on the claimant's claims about his functioning," the lay evidence

should be evaluated anew following remand of this matter and following reconsideration

of plaintiff's credibility.

     (5) **Did the ALJ err by finding plaintiff capable or working at a job that is inconsistent with a limitation to simple routine tasks**?

     Because this matter is reversed and remanded for further analysis with respect to

the medical evidence, *see supra*, sections 1 and 2, the step five finding must be

determined anew, as necessary, following remand of this matter. However, the Court

notes that even if this argument by plaintiff were to be accepted, another job was

identified by the VE as one which could be performed with plaintiff's RFC.

(6) **Did the ALJ err by failing to respond to a request for a subpoena duces tecum for the VE resulting in VE testimony about job numbers that the VE was unable to substantiate**?

Because this matter is reversed and remanded for further analysis with respect to the medical evidence, *see supra*, sections 1 and 2, the step five finding must be determined anew, as necessary, following remand of this matter. However, the Court notes plaintiff's argument regarding the testimony of the vocational expert ("VE") with respect to the specific number of jobs available that a person with plaintiff's RFC could perform.

The VE in this matter testified that a person with the RFC determined by the ALJ for plaintiff would be able to perform the jobs of mail clerk and routing clerk[1] (*see* Tr. 63). For example, the VE testified that there existed 69,145 jobs in the U.S. economy, and 1,255 jobs in the regional economy for a group of jobs that includes the job of mail clerk (*see* Tr. 63, 69-71). The VE admitted that the source she utilized does not publish data with job numbers by discrete DOT code; that "we are dealing with actually [] groups of jobs"; and, that the "numbers that are published are actually published for groups of jobs rather than individual jobs" (Tr. 69-70). The VE indicated that the job numbers for mail clerk she testified about (69,145; 1,255) reflected numbers for six different jobs, and

---

[1] Actually, the VE testified initially that one with plaintiff's RFC as determined by the ALJ also could perform the job of dryer attendant (*see* Tr. 63), then, following examination from plaintiff's attorney, she corrected herself, and changed her answer (*see* Tr. 64), acknowledging that a dryer attendant (laundry job) involved being in an environment with a lot of heat, making the job of dryer attendant not available to one with plaintiff's RFC (*see* Tr. 25 ("he must avoid concentrated exposure to extreme cold, heat, humidity  . . . .").

1    that she did not have data on how many actual mail clerk jobs (which is the only job of

2    the six that one with plaintiff's RFC could perform) existed. The Court also notes that at

3    step five, the burden shifts to the administration to demonstrate that significant number of

4    jobs exist that a claimant can perform. *See Pinto v. Massanari*, 249 F.3d 840, 844-45 (9th

5    Cir. 2001) ("the burden at step five shifts to the Secretary to show that, taking into

6    account a claimant's age, education, and vocational background, she can perform any

7    substantial gainful work in the national economy") (*citing* 20 C.F.R. §§ 404.1520(f) and

8    416.920(f); *Moore v. Apfel*, 216 F.3d 864, 869 (9th Cir. 2000)); *see also* 20 C.F.R. §

9    404.1560(c)(2) ("to support a finding that [one is] not disabled at this fifth step of the

10   sequential evaluation process, [the administration is] responsible for providing evidence

11   that demonstrates that other work exists in significant numbers in the national economy

12   that [one] can do, given [the] [RFC] and vocational factors").

13

14                                        CONCLUSION

15          Based on the stated reasons and the relevant record, the Court **ORDERS** that this

16   matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. §

17   405(g) to the Acting Commissioner for further proceedings consistent with this Order.

18          **JUDGMENT** should be for plaintiff and the case should be closed.

19          Dated this 2nd day of October, 2014.

20

21   _____

22   J. Richard Creatura
     United States Magistrate Judge

23

24

ORDER ON PLAINTIFF'S COMPLAINT - 15